1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT FOR THE

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   ROBERT BASSETT, et al.,        )        No. CV-F-09-528 OWW/SMS
                                    )
10                                  )        MEMORANDUM DECISION AND
                                    )        ORDER GRANTING IN PART
11                 Plaintiffs,      )        WITHOUT LEAVE TO AMEND,
                                    )        GRANTING IN PART WITH LEAVE
12          vs.                     )        TO AMEND AND DENYING IN PART
                                    )        DEFENDANTS' MOTIONS TO
13                                  )        DISMISS (Docs. 27 & 30) AND
   MICHAEL RUGGLES, et al.,         )        MOTION TO STRIKE (Doc. 29)
14                                  )
                                    )
15                 Defendants.      )
                                    )
16  _____)

17

        On January 26, 2009, Plaintiffs Robert Bassett and Christy
18
    Bassett filed a Complaint in the Fresno County Superior Court
19
    against Defendants Michael Ruggles, Kahram Zamani, Infinity Group
20
    Services (IGS), and Flagstar Bank (Flagstar).  The action was
21
    removed to this Court on March 19, 2009.  Plaintiffs then filed a
22
    First Amended Complaint (FAC).
23
        IGS is alleged to be licensed in California to engage as a
24
    broker of home loans; Zamani is alleged to be licensed in
25
    California as a mortgage broker and to have been the broker of
26

                                   1

record for IGS.  Ruggles is alleged to be licensed in California as a real estate agent who acted in the course and scope of his employment with Zamani and IGS.  Flagstar is alleged to be a banking institution.

The FAC alleges as General Allegations:

8.  In 2006, the Bassetts were interested in buying a home in Fresno, California.  The Bassetts located a home to purchase at 2770 W. Locust, Fresno, California ('the Property').

9.  In late 2006, in order to finance the purchase of the Property, the Bassets contacted IGS for help in securing financing for the Property.  IGS and Zamani agreed to serve the Bassetts in a fiduciary capacity as real estate loan brokers.  The Bassetts discussed a loan with Michael Ruggles, an employee of IGS and authorized representative of both IGS and Zamani.  With Ruggles' assistance, the Bassetts completed a loan application through IGS.

10.  On or about December 14, 2006, in the course and scope of his employment and with the authorization of IGS and Zamani, Ruggles told the Bassetts that their loan was not approved, but that alternate financing could be found.  Ruggles arranged for the transaction to be financed through Flagstar Bank.  Ruggles told the Bassetts that the loan he had obtained for them would be financed at a fixed rate of approximately 4%, and that the total monthly payments due on the loans would be approximately $2,100.00. Ruggles told the Bassetts that their loan carried a prepayment penalty provision of only 24 months.

11.  Based on these representations by Ruggles, the Bassetts were persuaded to enter into the loans  IGS had obtained for the Bassetts.

12.  The loans  closed on or about December 21, 2006.  Zamani was the broker of record

2

for the transaction.

13.   The loans were made in the amounts of $388,000.00 and $97,000.00, respectively. Contrary to the representations of Ruggles, the larger loan is a negative amortization adjustable rate loan.   The larger loan has an initial interest rate of 7.125%, which is scheduled to increase sharply beginning in 2012.   The initial monthly payment amount is $1,333.75.   The loan contains a prepayment penalty provision of 36 months.

14.   The smaller loan is a fixed rate loan with an interest rate of 8.75%.   The monthly payment amount is $753.10.

15.   The Bassets are informed and believe that Flagstar paid an illegal yield spread premium to IGS at closing that was not disclosed to the Bassetts.

16.   The Bassetts are informed and believe that IGS, and/or an employee of IGS, received an illegal yield spread premium for referring the Bassetts' federally-related mortgage loan to Flagstar, for including a prepayment penalty with one of the loans and for causing the Bassetts to sign loan documents with an interest rate that is higher than what the Bassetts qualified for.

17.   The Bassetts are informed and believe that Flagstar and IGS agreed amongst themselves to have the yield spread premium paid outside of the escrow so that the Bassetts would not discover it.   The Bassetts are informed and believe that defendants conspired together to actively conceal, and continue to conceal, evidence of the existence of the yield spread premium from the Bassetts.

18.   The Bassetts had no actual or constructive knowledge of the yield spread premium at closing because Flagstar intentionally hid the yield spread premium from the Bassetts.

19.   The Bassetts first suspected a yield spread premium existed in or about November

3

2008 when they contacted their attorney, Matthew Bradford, and asked him to review the loan documents from the loan transaction.

20.  No document provided to the Bassetts with regard to their loans discloses any payment made by Flagstar to IGS.

21.  On November 26, 2008, Bradford sent a letter to Flagstar requesting documentation which would confirm whether Flagstar had paid a yield spread premium to IGS in connection with the Bassetts' loan transaction. Bradford included with the letter an authorization of release of information signed by the Bassetts.

22.  On November 26, 2008, Bradford also sent the attorney for IGS a letter requesting documentation which would confirm whether IGS had received a yield spread premium from Flagstar in connection with the Bassetts' loan transaction.  Bradford included with the letter an authorization for release of information signed by the Bassetts.

23.  On or about December 12, 2008, Bradford received a letter from Flagstar indicating that although it would provide certain documentation; [sic] it would not provide information about payments made by Flagstar to IGS without a 'discovery order.'

24.  On December 19, 2008, Bradford sent Flagstar a letter indicating that by refusing to produce documents that could exonerate Flagstar of liability under RESPA or other claims, Flagstar was impliedly admitting wrongdoing.  Bradford stated in the letter that if he was not provided with the requested documents by December 29, 2008, he would proceed with litigation and seek the documents through litigation.

25.  On January 7, 2009, Bradford received a letter from Flagstar reiterating that it would not produce the requested documents without a discovery order.

26.  On January 28, 2009, Bradford sent a letter to Flagstar stating that, as a result

4

of Flagstar's failure to produce documents, the Bassetts had filed the instant action in Fresno County Superior Court against Flagstar and other defendants.  The letter indicated that the Bassetts would propound discovery on Flagstar shortly.

27.  In mid-March 2009, after Flagstar, IGS and Zamani were served with the summons and complaint, Bradford served Flagstar, IGS and Zamani with written discovery.  This discovery was designed to elicit evidence and establish facts regarding the yield spread premium paid by Flagstar to IGS and other matters giving rise to Flagstar's liability in this matter.

28.  In April 2009, Bradford received a letter from Flagstar's attorney indicating that, because Flagstar had removed the case to Federal Court, Flagstar would not respond to the discovery Bradford had propounded.  No defendant responded to the discovery requests.

29.  On April 27, 2009, Bradford conducted a Rule 26(f) conference with the respective legal counsels for IGS, Zamani, and Flagstar. During the Rule 26(f) conference, Bradford asked Flagstar's counsel several times whether Flagstar paid any compensation to IGS or anyone at IGS in connection with the Bassetts' loans.  Flagstar's counsel refused to state whether Flagstar paid a yield spread premium.  Flagstar's counsel replied that Flagstar paid customary fees and that she was not prepared to say any more than that.

30.  As of the filing of this First Amended Complaint, Flagstar, IGS and Zamani have continuously refused to provide the Bassetts or their counsel any documentation regarding the yield spread premium paid with regard to the Bassett's loans.  Additionally, Flagstar, IGS and Zumani have refused to admit or deny whether a yield spread premium was paid with regard to the Bassett's loans.

Paragraph 63 of the FAC that "[i]n doing the things alleged herein, Flagstar acted as a federally insured lender."

5

Defendants move to dismiss the FAC for failure to state a claim upon which relief can be granted.  In addition, Flagstar moves to strike certain paragraphs in the FAC.

A.   **MOTIONS TO DISMISS**.

1.   **Governing Standard**.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'"  *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d

6

1   934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*,

2   550 U.S. 544, 570 (2007). "'Factual allegations must be enough

3   to raise a right to relief above the speculative level.'" *Id.*

4   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

5   does not need detailed factual allegations, a plaintiff's

6   obligation to provide the 'grounds' of his 'entitlement to

7   relief' requires more than labels and conclusions, and a

8   formulaic recitation of the elements of a cause of action will

9   not do." *Bell Atlantic, id.* at 555. A claim has facial

10  plausibility when the plaintiff pleads factual content that

11  allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged. *Id.* at 556. The

13  plausibility standard is not akin to a "probability requirement,'

14  but it asks for more than a sheer possibility that a defendant

15  has acted unlawfully, *Id.* Where a complaint pleads facts that

16  are "merely consistent with" a defendant's liability, it "stops

17  short of the line between possibility and plausibility of

18  'entitlement to relief.'" *Id.* at 557. In *Ashcroft v. Iqbal*, ___

19  U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

20          Two working principles underlie our decision
            in *Twombley.* First, the tenet that a court
21          must accept as true all of the allegations
            contained in a complaint is inapplicable to
22          legal conclusions. Threadbare recitations fo
            the elements of a cause of action, supported
23          by mere conclusory statements, do not suffice
            ... Rule 8 marks a notable and generous
24          departure from the hyper-technical, code-
            pleading regime of a prior era, but it does
25          not unlock the doors of discovery for a
            plaintiff armed with nothing more than
26          conclusions. Second, only a complaint that

states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

1.  <u>Status of Flagstar</u>.

The FAC alleges that Flagstar was the lender in connection with Plaintiffs' loans.  Flagstar's opening brief asserts that

Plaintiffs entered into two mortgage loans with IGS and that Flagstar later bought these loans.  Plaintiff responds that the FAC alleges that Flagstar acted as the lender and that a motion to dismiss must address the facts as pleaded.

Accompanying Defendant Flagstar's reply brief is a request to take judicial notice of the Fixed/Adjustable Rate Note and Prepayment Addendum to Note for Loan No. 501291396, in the amount of $388,000.00, signed by Robert Bassett and Kahram Zamani, (Exhibit 1), and the Balloon Note for Loan No. 5012911523, in the amount of $97,000, signed by Robert Bassett and Kahram Zamani, (Exhibit 2), copies of which are attached to the request for judicial notice.  Both notes explicitly state that IGS is the lender.

Plaintiffs argue that these notes do not establish that IGS rather than Flagstar was the lender for the loan transactions and dispute that IGS was the lender.  Plaintiffs refer to the stamped and signed statements at the bottom of page 4 of Exhibit 1 and the bottom of page 2 of Exhibit 2:

>PAY TO THE ORDER OF FLAGSTAR BANK, FSB
>WITHOUT RECOURSE

signed by Defendant Zamani as president and CEO of IGS. Plaintiffs contended at the hearing that they are alleging the same type of transaction discussed in *Brewer v. Indymac Bank*, 609 F.Supp.2d 1104 (E.D.Cal.2009).

In *Brewer*, the plaintiffs alleged that they entered into a consumer credit transaction with Residential Mortgage Capital

("RMC") whereby Plaintiffs obtained two loans for the financing of residential real property.  Plaintiffs alleged RMC failed to disclose material terms of Plaintiffs' loans, unlawfully obtained higher origination loan fees from Plaintiffs, and transferred Plaintiffs' loans through a sham transaction through which RMC unlawfully obtained a secret profit, i.e., Plaintiffs alleged that RMC devised a scheme with Indymac whereby RMC transferred Plaintiffs' loans to Indymac and received a secret profit in direct contravention of federal law and fiduciary duties owed to Plaintiffs:

> According to plaintiffs, RMC acted as plaintiffs' mortgage broker and thus owed plaintiffs a fiduciary duty ... Plaintiffs allege that in securing plaintiffs' loans, RMC and Indymac engaged in a 'table funded' transaction designed to circumvent the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2061, et seq. ('RESPA') ... Plaintiffs further allege that although the loans were table funded by RMC, RMC attempted to secure 'holder in due course' status by disguising the table funded transaction as a secondary market transaction ... Through this course of conduct, defendants purposefully attempted to thwart the provisions of RESPA designed to protect debtor consumers ... Plaintiffs allege that as payment for securing plaintiffs' loans and in direct violation of RESPA, RMC received a secret profit from Indymac that RMC failed to disclose to plaintiffs, despite RMC's fiduciary duty to do so ....

609 F.Supp.2d at 1111.  The District Court explained:

> '*Table funding* means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds.  A table funded transaction is not a secondary market transaction.  24 C.F.R. § 3500.2 (2009) ....

10

*Id.* at n. 3.

Judicial notice is taken that the two notes state what they state; however, given Plaintiffs' contentions at the hearing, whether Flagstar was the lender on the two loans cannot be determined on a motion to dismiss.  Nonetheless, the FAC does not allege facts from which it may be inferred that Flagstar, rather than IGS, was the lender on the loans advanced to Plaintiffs. Leave to amend is GRANTED in order that Plaintiffs may specifically allege the facts upon which they rely in contending that Flagstar was the lender.

> 3.  <u>Fifth Cause of Action for Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*</u>

In enacting RESPA, the Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers ... are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices ...."  12 U.S.C. § 2601(a).  The purpose of RESPA was to effect certain changes in the settlement process that will result, *inter alia,* "in more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b)(1) & (2).  12 U.S.C. § 2607(a) provides:

> No person shall give and no person shall
> accept any fee, kickback, or thing of value
> pursuant to any agreement or understanding,
> oral or otherwise, that business incident to
> or a part of a real estate settlement service
> involving a federally regulated mortgage loan
> shall be referred to any person.

Section 2607(c) provides:

> Nothing in this section shall be construed as
> prohibiting ... (2) the payment to any person
> of a bona fide salary or compensation or
> other payment for goods or facilities
> actually furnished or for services actually
> performed.

As stated in *Schuetz v. Banc One Mortgage*, 292 F.3d 1004 (9th Cir.2003), *cert. denied*, 537 U.S. 1171 (2004):

> A yield spread premium, or 'YSP,' is a lump
> sum paid by a lender to a broker at closing
> when the loan originated by the broker bears
> an above-par interest rate.  As HUD has
> explained it:
>
> > Payments to brokers by lenders,
> > characterized as yield spread
> > premiums, are based on the interest
> > rate and points of the loan entered
> > into as compared to the par rate
> > offered by the lender to the
> > mortgage broker for that particular
> > loan (e.g., a loan of 8% and no
> > points where the par rate is 7.50%
> > will command a greater premium for
> > the broker than a loan with a par
> > rate of 7.75% and no points).  In
> > determining the price of a loan,
> > mortgage brokers rely on rate
> > quotes issued by lenders, sometimes
> > several times a day.  When a lender
> > agrees to purchase a loan from a
> > broker, the broker receives the
> > then applicable pricing for the
> > loan based on this difference
> > between the rate reflected in the
> > rate quote and the rate of the loan
> > entered into by the borrower ....

12

> Lender payments to mortgage brokers may reduce the up-front costs to consumers.  This allows consumers to obtain loans without paying direct fees themselves.  Where a broker is not compensated by the consumer through a direct fee, or is partially compensated through a direct fee, the interest rate fo the loan is increased to compensate the broker or the fee is added to principal.  In any of these compensation methods described, all costs are ultimately paid by the consumer, whether through direct fees or through the interest rate.
>
> 1999 Statement of Policy, 44 Fed.Reg. at 10081 (footnotes omitted).

*Id.* at 1007-1008; *see also Bjustron v. Trust One Mortgage Corp.,* 322 F.3d 1201, 1204 n. 2 (9th Cir.2003):

> A yield spread premium (YSP) is a payment made by a lender to a mortgage broker in exchange for that broker's delivering a mortgage ready for closing that is at an interest rate above the par value of the loan being offered by the lender.  The YSP is the difference between the par rate and the actual rate of the loan; this difference is paid to the broker as a form of bonus.  A YSP is typically a certain percentage of the loan amount; therefore, the higher the loan is above par value, the higher the YSP paid the mortgage broker.

At the hearing, Plaintiffs referred for the first time  to an undisclosed "service release premium."  As explained in *Bjustrom*, *id.* at n. 3:[1]

> A service release premium (SRP) is a payment

---

[1] If Plaintiffs contend that there was an undisclosed "service release premium" as well as a yield spread premium involved in this action, Plaintiffs must allege the facts upon which they rely in making this contention.

> made by a lender to a mortgage broker that is
> based on the amount of the loan referred to
> the lender to service ... A larger loan has
> more valuable servicing rights because the
> total interest paid by the borrower is
> greater ....

### a. <u>Statute of Limitations</u>.

Defendants move to dismiss the Fifth Cause of Action as barred by the applicable statute of limitations.

12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of
> section 2650, 2607, or 2608 of this title may
> be brought in the United States district
> court or in any other court of competent
> jurisdiction, for the district in which the
> property involved is located, or where the
> violation is alleged to have incurred, within
> ... 1 year in the case of a violation of
> section 2607 ro 2608 of this title from the
> date of the occurrence of the violation ....

The Fifth Cause of Action, after incorporating Paragraphs 1-30, alleges that Flagstar acted as a federally insured lender; that the loan papers that Ruggles, Zamani and IGS fraudulently induced Plaintiffs to execute constituted "federally-related mortgage loans" within the meaning of 12 U.S.C. § 2602(1); and that, in doing the things alleged, Ruggles, Zamani and IGS offered Plaintiffs "settlement services" within the meaning of Section 2602(3).  The Fifth Cause of Action alleges:

> 66.   The Bassetts are informed and believe
> that IGS, and/or an employee of IGS, received
> an illegal yield spread premium for referring
> the Bassetts' federally-related mortgage loan
> to Flagstar.  The Bassetts are informed and
> believe that Flagstar and IGS agreed amongst
> themselves to have the yield spread premium
> paid outside of the escrow so that the
> Bassetts would not discover it.  The Bassetts

14

are informed and believe that defendant actively concealed, and continue to conceal, evidence of the existence of the yield spread premium from the Bassetts.

67. Because the Bassetts had no actual or constructive knowledge of the yield spread premium at closing, because Flagstar intentionally hid the yield spread premium from the Bassetts, and because Flagstar continues to refuse to produce any documents relating to the yield spread premium, the statute of limitations applicable to this cause of action must be tolled.

68. The yield spread premium paid by Flagstar to IGS constituted an illegal, unearned fee in violation of 12 U.S.C. section 2607 because the yield spread premium was not disclosed to the Bassetts prior to the closing of the loan and it did not represent payment for services actually performed nor was it reasonably related to the value of goods or services received by the Bassetts. The Bassetts will amend this Complaint [sic] to more specifically reflect the ways in which the yield spread premium violates 12 U.S.C. section 2607 after defendants produce documents showing the details of the yield spread premium.

The Fifth Cause of Action prays for joint and several liability pursuant to Section 2607(d) for an amount equal to three times "the amount of all unearned fees, kickbacks and referral fees" and for attorneys' fees and costs.

Plaintiffs concede that the applicable statute of limitations for a RESPA claim is one year and that the statute of limitations commenced when the loans closed. Plaintiffs argue that the Fifth Cause of Action should not be dismissed because the FAC alleges equitable tolling of the statute of limitations.

The threshold issue is whether equitable tolling is

15

available in a RESPA claim.  There is a split of Circuit

authority; the Ninth Circuit has yet to address the issue.

In *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037

(D.C.Cir.1986), the District of Columbia Circuit held that the

one year statute of limitation is a jurisdictional prerequisite

to suit under RESPA and, therefore, the time limitation is not

subject to equitable tolling under the doctrine of fraudulent

concealment:

> In enacting § 2614, the language Congress
> employed indicates an intent to place a
> jurisdictional time limitation upon the
> commencement of actions to recover damages
> under the Act.  Section 2614 establishes
> identical jurisdictional grounds for both
> federal and state courts.  Because the time
> limitation contained in § 2614 is an integral
> part of the same sentence that creates
> federal and state court jurisdiction, it is
> reasonable to conclude that Congress intended
> thereby to create a *jurisdictional* time
> limitation.  The subtitle of the section also
> indicates Congress's intention that the time
> limitation be jurisdictional.  In enacting §
> 2614, Congress entitled the section
> 'JURISDICTION OF COURTS.'  Pub.L. No. 93-534,
> § 16, 88 Stat. 1724, 1731 (1974).  This
> description of the legislation was not added
> by the publisher or codifier, but was part of
> the Act as written and passed by Congress.
> As such, it constitutes an indication of
> congressional intent, *see Utah Power & Light
> Co. v. ICC*, 747 F.2d 721, 727 (D.C.Cir.1984),
> the most reasonable interpretation of which
> is that Congress intended the statute to
> create the courts' 'jurisdiction,' *i.e.*, a
> jurisdictional time limitation.  Moreover,
> nothing in the congressional committee
> reports or floor debates on the legislation
> contradicts this interpretation of
> congressional intent.

*Id.* at 1039.  The D.C. Circuit stated that Section 2614 is

16

identical in all material respects to the time limitation set
forth in 15 U.S.C. § 1640(e), applicable to actions under the
Truth in Lending Act (TILA), and that the TILA time limitation
has been held to be jurisdictional by the Sixth Circuit in *Rust
v. Quality Car Corral, Inc.*, 614 F.2d 1118, 1119 (6th Cir.1980).
*Id.* at 1039-1040.  *Hardin* ruled that Section 2614 is
distinguishable from "non-jurisdictional" statutes of limitations
such as 15 U.S.C. § 15b, because the subtitle applied by Congress
was "Statute of Limitations" rather than "Jurisdiction of Courts"
and was not directly tied to the creation of jurisdiction.  *Id.*
at 1040.  *Hardin* then ruled that Section 2614's jurisdictional
time limitation is not subject to equitable tolling:

> The Supreme Court has held that the doctrine
> of equitable tolling 'is read into *every*
> federal statute of limitation.' *Holmberg v.
> Armbrecht*, 327 U.S. 392, 397 ... (1946) ...
> It is equally clear, however, that Congress
> can set jurisdictional time prerequisites to
> the entertainment of federal claims.  Our
> task, therefore, is to determine whether
> Congress intended the Act's jurisdictional
> time limitation to be subject to equitable
> tolling ....
>
> Jurisdictional provisions in federal statutes
> are to be strictly construed ...  This is
> illustrated by the Supreme Court's opinion in
> *Finn v. United States*, 123 U.S. 227 ...
> (1887), where the Court was called upon to
> construe a federal statute conferring
> jurisdiction upon the Court of Claims to
> entertain certain federal causes of action,
> subject to the limitation that the claim be
> brought 'within six years after the claim
> first accrues[.]' *Id.* at 229 ... The Court
> found this limitation to be jurisdictional in
> nature, and that it could be tolled only as
> expressly provided in the statute itself.
> *Id.* at 232 ... Where a time limitation is

1        jurisdictional, it must be strictly construed
         and will not be tolled or extended on account
2        of fraud.  *United States ex rel. Nitkey v.*
         *Dawes*, 151 F.2d 639, 642-644 (7th Cir.1945),
3        *cert. denied*, 327 U.S. 788 ... (1946).

4        Section 2614 provides no grounds for tolling
         its time limitation, nor does the Act's
5        legislative history suggest any.  Moreover,
         we interpret *Finn* and *Dawes* as holding that
6        where, as here, a time limitation is
         jurisdictional, the doctrine of equitable
7        tolling does not apply.

8   *Id.* at 1040-1041.

9        In *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118

10  F.3d 1157 (7th Cir.1997), the Seventh Circuit ruled that the one

11  year limitation in Section 2614 is subject to equitable tolling.

12  After noting that equitable tolling does not apply to a

13  jurisdictional time limit, the Court opined:

14       ... The practical meaning of a jurisdictional
         limitation is that the court must enforce it
15       regardless of any agreement between or
         conduct by the parties; it is not only for
16       their protection.  Statutes of limitations
         are ordinarily for the protection of
17       defendants and so can be waived or forfeited
         by them; but they also protect the courts
18       from the burden of adjudicating old claims
         ... If the second goal were paramount, the
19       period of limitations would not be within the
         defendant's power to waive.  But we cannot
20       find any case that holds a federal statute of
         limitations jurisdictional on this ground.
21       With one exception to be noted, courts have
         held federal statutes of limitations to be
22       jurisdictional only when the United States is
         a defendant - that is, out of regard for the
23       defendant (and in keeping with the general
         reluctance of courts to estop the government
24       to assert its statutory rights) rather than
         out of regard for the courts or the social
25       interest in burying old claims.  *See Irwin v.*
         *Department of Veterans Affairs,* 498 U.S. 89,
26       95 ... (1990)('time requirements in lawsuits

18

> between private litigants are customarily
> subject to "equitable tolling"'). States are
> more prone to treat their statutes of
> limitations as jurisdictional, ..., and one
> of our sister circuits has held that federal
> statutes of limitations are jurisdictional in
> criminal cases ... but the other circuits,
> including our own, disagree ....
>
> Of particular relevance are the decisions
> which hold that the statute of limitations in
> the Truth in Lending Act is not
> jurisdictional even though the limitations
> period is found in the same section as the
> provision conferring jurisdiction on the
> federal courts to enforce the Act, *King v.
> California*, 784 F.2d 910, 914-15 (9th
> Cir.1986); *Jones v. TransOhio Savings Ass'n*,
> 747 F.2d 1037, 1039-43 (6th Cir.1984) - the
> principal ground on which the District of
> Columbia Circuit has held that the one-year
> statute of limitations in the Real Estate
> Settlement Procedures Act is jurisdictional.
> *Hardin v. City Title & Escrow Co.* ... *Hardin*
> is inconsistent with these decisions, with
> the Supreme Court's decision in *Irwin*, and
> with our decision in *Navco*, and we therefore
> decline to follow it.

*Id.* at 1166-1167.

The Supreme Court's ruled that, absent a clear indication to the contrary, equitable tolling should be read into every federal statute, *Holmberg*, *supra*, 327 U.S. at 396-397. The Seventh Circuit relied on *King v. California*, *supra*, 784 F.2d at 914-915, where the Ninth Circuit ruled that the statute of limitations in TILA claims is subject to equitable tolling. The weight of authority, coupled with the Seventh Circuit's persuasive analysis and conclusion that Section 2614 is subject to equitable tolling presents the better view. A number of District Courts have held that RESPA's statute of limitations is subject to equitable

19

tolling.  *See e.g. Brewer v. Indymac Bank*, *supra*, 609 F.Supp.2d at 1117-1118; *Blaylock v. First American Title Ins. Co.*, 504 F.Supp.2d 1091, 1106-1107 (W.D.Wash.2007);; *Marcelos v. Dominguez*, 2008 WL 1820683 *7 (N.D.Cal.2008) and cases cited therein.  For all these reasons, the one-year limitation of Section 2614 is subject to equitable tolling.

Defendants contend that the FAC does not adequately allege equitable tolling.  The parties dispute the standard to be applied in determining whether equitable tolling has been shown.

Defendants cite *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir.2006).  *Mendoza* addresses equitable tolling of the one-year limitation period applicable to a petition for writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1999 ("AEDPA").  The Ninth Circuit held:

> '[A] litigant seeking equitable tolling [of the one-year AEDPA limitations period] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'  *Pace v. DiGuglielmo*, 544 U.S. 408 ... (2005).  '[T]he threshold necessary to trigger equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule.'  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002) ... This high bar is necessary to effectuate the 'AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims.'  *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir.2003).

Plaintiffs argue that the appropriate standard is stated in *Brewer v. Indymac Bank*, *supra*, 609 F.Supp.2d at 1117, which in turn relies on *Blaylock v. First American Title Ins. Co.*, *supra*,

504 F.Supp.2d at 1108:

>The Ninth Circuit has explained that the
>doctrine of equitable tolling 'focuses on
>excusable delay by the plaintiff,' *Johnson v.*
>*Henderson*, 314 F.3d 409, 414 (9th Cir.2002),
>and inquires whether 'a reasonable plaintiff
>would ... have known of the existence of a
>possible claim within the limitations
>period.'  *Santa Maria v. Pacific Bell*, 202
>F.3d 1170, 1178 (9th Cir.2000) ... Equitable
>tolling focuses on the reasonableness of the
>plaintiff's delay and does not depend on any
>wrongful conduct by the defendant.  *Id.* at
>1178.

The *Brewer* Court also relied on *King*, *supra*, 784 F.2d at 915, in

concluding that "'equitable tolling may, in appropriate

circumstances, suspend the limitations period until the borrower

discovers or has reasonable opportunity to discover the fraud or

nondisclosures that form the basis of the' RESPA action."  609

F.Supp.2d at 1118.  The *Brewer* Court ruled:

>Plaintiffs allege that they delayed in filing
>suit for defendants' RESPA violations because
>defendants allegedly concealed the details of
>the fraudulent transfer and the accompanying
>secret profit which gave rise to the RESPA
>claim.  As such, plaintiffs delay in filing
>suit may be excusable.  Construing
>plaintiffs' complaint liberally and in the
>light most favorable to plaintiffs,
>plaintiffs have alleged sufficient facts to
>raise an issue whether the one-year statute
>of limitation contained in 12 U.S.C. § 2614
>should be equitably tolled.

*Id.*

Plaintiffs argue that the *Mendoza* standard is limited to the

AEDPA petitions:

>The reasoning behind the high standard for
>equitable tolling of the AEDPA statute of
>limitations for filing a habeas petition has

21

nothing in common with the issues at stake
for equitable tolling of a RESPA claim.  For
example, a prisoner tends to understand that
he/she has been incarcerated once the
incarceration begins.  On the other hand,
home purchasers like the Bassetts might not
have any way of knowing that they have been
victimized because the lender and the broker
hide their kickback payment from the home
purchaser.  In the Bassetts' case, the
standard for whether equitable tolling should
apply must take into account the fact that
Flagstar and IGS not only hid the kickback
from the Bassetts but refused and continue to
refuse to respond to their inquiries after
they became suspicious.  Certainly, the law
does not encourage and reward deliberate
obfuscation by tortfeasors.

Defendants reply that the *Mendoza* standard has been applied

to RESPA claims, citing *Cornelius v. Fidelity Nat. Title Co.*,

2009 WL 596585 * 7 (W.D.Wash.2009), and *Perkins v. Johnson*, 551

F.Supp.2d 1246, 1253 (D.Colo.2008).  In *Perkins*, the District

Court relied on the Tenth Circuit's equivalent of the equitable

tolling standard applicable to AEDPA claims.

In *Santa Maria v. Pacific Bell*, 202 F.3d 1170 at 1178, the

Ninth Circuit discussed the difference between equitable estoppel

and equitable tolling:

Equitable tolling may be applied if, despite
all due diligence, a plaintiff is unable to
obtain vital information bearing on the
existence of his claim ... [I]t focuses on
whether there was excusable delay by the
plaintiff.  If a reasonable plaintiff would
not have known of the existence of a possible
claim within the limitations period, then
equitable tolling will serve to extend the
statute of limitations for filing suit until
the plaintiff can gather the information he
needs ... However, equitable tolling does not
postpone the statute of limitations until the
existence of a claim is a virtual certainty

....

Defendants argue that the FAC does not allege facts from which it may be inferred that Plaintiffs' delay in filing this action was excusable.  Defendants contend that the FAC "concedes" that Plaintiffs discovered the core of their claim, i.e., that a yield spread premium might exist for their loan by contacting their attorney in November 2008, but fail to plead any facts showing why Plaintiffs could not have contacted a lawyer about their loan during the statute of limitations period between December 2006 to December 2007 or allege any facts showing why they could not have discovered the alleged violation earlier. Defendants note that the loan documents provided to Plaintiffs at the closing set forth the terms of the loans and also set forth that the loans are to be paid to the order of Flagstar without recourse.

Defendants are not entitled to dismissal of the Fifth Cause of Action as barred by the statute of limitations.  Plaintiffs have pleaded in effect, that based on their suspicion they sought confirmation from Flagstar whether a yield spread premium was paid, which has been steadfastly refused.  Whether Plaintiff should have done more sooner presents a disputed question of fact that must be addressed by summary judgment or trial.  The *Iqbal* standard is met.  Defendants are well informed of this claim. Defendants' motions to dismiss the Fifth Cause of Action as barred by the statute of limitations are DENIED.

          **b.    Adequacy of Pleading Violation of RESPA.**

Defendants move to dismiss the Fifth Cause of Action, arguing that the FAC's allegations of Paragraphs 15 and 16 of the FAC do not suffice to state a claim for violation of RESPA:

> 15.   The Bassets are informed and believe that Flagstar paid an illegal yield spread premium to IGS at closing that was not disclosed to the Bassetts.

> 16.   The Bassetts are informed and believe that IGS, and/or an employee of IGS, received an illegal yield spread premium for referring the Bassetts' federally-related mortgage loan to Flagstar, for including a prepayment penalty with one of the loans and for causing the Bassetts to sign loan documents with an interest rate that is higher than what the Bassetts qualified for.

Compensation in the form of yield spread premiums is not per se illegal or legal. *See Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir.2003).  The Ninth Circuit has adopted the HUD regulations' two-part test for determining whether yield spread premiums violate the kickback provisions of RESPA. *See Schuetz v. Banc One Mortgage Corp.*, *supra*, 292 F.3d at 1012.  Under the HUD test, "'the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid .... The second question is whether the payments were reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.' 66 Fed.Reg. at 53054." *Manganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 603 (N.D.Cal.2007).

Defendants argue:

> Plaintiffs allegations have no facts to show what rate and terms the Bassetts did qualify

1        for, nor why the rate and terms are deemed
         improper - thus no showing of detriment.  It
2        should be noted that interest rates are not
         the only terms of a loan and plaintiffs have
3        not indicated what terms make these loans
         improper.  Further, there is no showing that
4        a prepayment penalty is compensation under
         the definition of RESPA because it is not a
5        payment, it is at most a contingency that
         depends on future events.

6
         Here, plaintiffs' RESPA-based allegations
7        against defendants are wholly conclusory.
         The plaintiffs' allegations are admittedly
8        based on information and belief, that
         Flagstar paid a yield spread premium that was
9        hidden from the plaintiffs.  Plaintiffs do
         not allege any specific facts establishing:
10       (1) the existence of a yield spread premium;
         (2) that a yield spread premium was ever
11       paid; (3) that it was hidden, as opposed to
         not being disclosed because there is no
12       requirement to disclose it; (4) what the
         amount of any premium payment was, or (5)
13       what the nature of the services were that
         gave rise to the payment, e.g., was it
14       illegal or is it covered by a safe harbor.
         Plaintiffs allege that defendants [sic] IGS
15       received an illegal yield spread premium for
         'including a prepayment penalty in a loan and
16       causing the Bassetts to sign loan documents
         with an interest rate higher than what the
17       Bassetts qualified for.'  Yet, plaintiffs did
         not allege any specific facts to support
18       their conclusory allegation that the yield
         spread premium payment paid 'did not
19       represent payment for services actually
         performed nor was it reasonably related to
20       the value of goods or services received by
         the Bassetts.' ... The plaintiffs' allegation
21       'including a prepayment penalty' does not
         indicate malfeasance as prepayments are
22       conditional and are not within the ambit of
         RESPA and the phrase 'causing the Bassetts to
23       sign loan documents with an interest rate
         that is higher than what the Bassetts
24       qualified for' is ambiguous and without
         meaning.  Interest rates are not the only
25       aspect of a loan.

26  Defendants cite *Geraci v. Homestreet Bank*, 203 F.Supp.2d 1211,

1216-1217 (W.D.Wash.2002), *aff'd*, 347 F.3d 749 (9th Cir.2003):

> A yield spread premium is illegal only if it is not exchanged for goods or services actually provided.  The operative test is whether the yield spread premium does or does not bear a reasonable relationship to the value of any goods or services that were actually provided.  Because the plaintiffs have failed to allege any facts that satisfy this test, their RESPA claim fails as a matter of law.

Plaintiffs respond that documents obtained through discovery in this action show:

> (1) Prior to the close of the Bassetts' loans, Flagstar Bank provided IGS a line of credit to fund loans; (2) Prior to the close of the Bassetts' loans, Flagstar Bank provided rate quotes to IGS that indicated what premiums Flagstar would pay to IGS if IGS obtained an above par loan; (3) Prior to the close of the Bassetts' loans, IGS delivered to Flagstar the Bassetts' loan application and other information to Flagstar for approval; (4) Prior to the close of the Bassetts' loans, Flagstar approved the Bassetts' loans and dictated what additional information and documents were required from IGS; (5) IGS provided a written disclosure to the Bassetts stating that IGS is a licensed loan broker and owes the Bassetts a fiduciary duty; (6) Flagstar is identified as the lender on certain documents for the loan closing; (7) Flagstar directed that upon recording the loan documents should be mailed directly to Flagstar; and (8) Flagstar paid IGS more than $9,000 as a premium because IGS induced the Bassetts to sign documents for above par loans.

Plaintiffs also refer to the allegations in Paragraph 66 of the FAC.

This discovery is not included in the statement of a claim for alleged violation of RESPA with regard to the yield spread

26

premium.  The fact of a premium is not *ipso facto* a violation of RESPA.  It is only a violation if Plaintiffs satisfy the two-part test, i.e., whether goods or facilities were actually furnished or services were actually performed for the compensation paid and whether the payments were reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.  Failure to disclose a yield spread premium may be a violation of TILA, *see discussion infra*, but does not appear to be an element of a claim for violation of RESPA.  Further, the allegations in Paragraph 66 are conclusory.

Defendants' motions to dismiss the Fifth Cause of Action for failure to state a claim are GRANTED WITH LEAVE TO AMEND.

4.  <u>Sixth Cause of Action for Violation of TILA, 15 U.S.C. § 1601 *et seq.*</u>

The Sixth Cause of Action alleges that, in violation of 15 U.S.C. § 1601, Defendants provided Plaintiffs with Truth in Lending disclosure forms required by 15 U.S.C. § 1604(b) and 12 C.F.R. § 226.17, which did not disclose a yield spread premium paid by Flagstar to IGS, and that, as a proximate result of the failure to provide accurate Truth in Lending disclosures, Plaintiffs were wrongfully induced to enter into the loan transaction, and have incurred significant damages in an amount to be determined at trial or, alternatively, entitle Plaintiffs to rescission of the loans.

"The declared purpose of TILA is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to

compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'  15 U.S.C. § 1601(a).  Consequently, TILA mandates that creditors provide borrowers with clear and accurate disclosures of borrowers' rights, finance charges, the amount financed, and the annual percentage rate.  *See, e.g.,* 15 U.S.C. §§ 1632, 1635, 1638."  *Brewer v. Indymac Bank*, *supra*, 609 F.Supp.2d at 1114.

### a.  Statement of Limitations.

Defendants move to dismiss the Sixth Cause of Action for violation of TILA on the ground that it is barred by the one-year limitation period set forth in 15 U.S.C. § 1640(e).

Because Plaintiffs have adequately plead facts from which it may be inferred that they are entitled to equitable tolling of the statute of limitations, *see discussion supra*, Defendants' motions to dismiss the Sixth Cause of Action as barred by the statute of limitations are DENIED.

### b.  Statement of a Claim.

Defendant IGS moves to dismiss the Sixth Cause of Action for failure to state a claim upon which relief can be granted.  In so asserting, Defendant IGS contends:

> Again, since a prepayment penalty is not a cost, it is not part of the prepaid finance charge that factors into calculating the APR, the TILA disclosure vehicle.  With regard to the allegation that plaintiff [sic] paid an 'interest rate that is higher than the Bassetts qualified for' the allegation is

vague ..., but TILA does deal with interest
rates based on the amounts financed and
tolerances for a safe harbor calculation.
Here, plaintiffs have not supplied facts,
calculations or estimates for their basis for
the allegation that there is a TILA
violation.  TILA is based on the amount
financed, and a prepayment penalty is a
future contingency and is not calculated in
the amount financed nor TILA.  Plaintiff has
not stated why the disclosures are in
violation of TILA, why or how the calculation
[sic] are done incorrectly, nor whether the
amount stated is a violation of the safe
harbor, the tolerance allowed for error.
Lastly, plaintiffs claim the interest is
something they are not qualified for.
Despite this ambiguousness, and assuming
plaintiff [sic] means they were charged a
higher rate, or perhaps a higher yield
spread, we don't know which, this TILA claim
fails because plaintiffs did not set forth
facts that state how and why either rate was
higher than that which is allowed under TILA.

Defendant IGS appears not to have read the Sixth Cause of

Action; it alleges a violation of TILA because of the failure to

disclose the yield spread premium.  Given the specificity of the

Sixth Cause of Action, dismissal on the ground of failure to

state a claim is not warranted.[2]

Defendant IGS's motion to dismiss the Sixth Cause of Action

for failure to state a claim is DENIED.

    5.  <u>Preemption of State Law Causes of Action</u>.

The FAC alleges causes of action against Flagstar for fraud

(Second Cause of Action); conspiracy to breach fiduciary duty

---

[2]In denying the motions to dismiss, the Court expresses no
opinion as to the merits of Plaintiffs' TILA claim.  *See
Hernandez v. Downey Savings and Loan Association,* 2009 WL 704381 *
8 (S.D.Cal.2009).

29

1 (Fourth Cause of Action); and unfair business practices in

2 violation of California Business and Professions Code §§ 17200 *et*

3 *seq.* (Eighth Cause of Action).

4     The Second Cause of Action alleges:

5        41.   The Bassetts are informed and believe
and thereon allege that at some time prior to

6 December 2006, IGS and Flagstar entered into
an agreement regarding the payment of a yield

7 spread premium in connection with the
Bassetts' loan transaction.  Flagstar and IGS

8 agreed that if IGS could induce the Bassetts
to agree to obtain a loan through Flagstar at

9 an interest rate higher than the Bassetts
were qualified for, that Flagstar would pay a

10 yield spread premium directly to IGS.  IGS
and Flagstar agreed that the yield spread

11 premium would be paid outside of closing and
would not be disclosed to the Bassetts.  At

12 the time IGS and Flagstar made this
agreement, Flagstar knew or should have known

13 that IGS would be required to deceive the
Bassetts in order to induce the Bassetts to

14 enter into a loan which had an interest [sic]
higher than the Bassetts qualified for.

15 Pursuant to this agreement, Ruggles
fraudulently induced the Bassetts to consent

16 to the loan transaction ....

17        42.   The Bassetts are informed and believe
that, pursuant to the agreement between

18 Flagstar and IGS, Flagstar made a payment to
IGS in order to compensate IGS for inducing

19 the Bassetts to enter into a more expensive
loan than was necessary.  The Bassetts are

20 informed and believe that Defendant agreed to
keep the yield spread premium out of the

21 escrow because the yield spread premium was
illegal and because if it had been in the

22 escrow, the Bassetts would have discovered
it.  Had the Bassetts discovered the yield

23 spread premium the Bassetts would have been
alerted to the fact that their loan was

24 unnecessarily expensive and would not have
entered into the loan.

25

26 The Fourth Cause of Action reiterates the allegations of the

30

Second Cause of Action, except that Paragraph 56 alleges that
"Flagstar knew or should have known that IGS would be required to
breach their fiduciary duties to the Bassetts in order to induce
the Bassetts to enter into a loan which had an interest [sic]
higher than the Bassetts qualified for" and "Flagstar knew or
should have known that IGS would be required to breach their
fiduciary duties to the Bassetts in order to hide the payment of
a yield spread premium from the Bassetts."  The Eighth Cause of
Action incorporates all preceding allegations and alleges:

> 82.  In doing the things alleged above,
> defendants engaged in unlawful and fraudulent
> business practices within the meaning of
> Business and Professions Code section 17200
> et seq.

> 83.  More specifically, in the course of
> conducting their respective business
> practices, defendants have participated
> together in deceiving the Bassetts and
> inducing them to enter the loan transaction
> under false pretenses.  Also, defendants have
> participated in making and receiving a
> payment that violates the provisions of 12
> U.S.C. section 2607, and in failing to
> disclose said payment to the Bassetts.

Defendant Flagstar moves to dismiss these state law causes
of action on the ground that they are preempted by the Home
Owners Loan Act (HOLA), 12 U.S.C. §§ 1461 et seq.[3]

Congress enacted HOLA "to charter savings associations under

---

[3]Flagstar requests the Court take judicial notice of
Flagstar's 2008 Form 10-K filing with the SEC and the FDIC's
directory profile for Flagstar Bank, FSB, to demonstrate that
Flagstar is a federally chartered savings bank regulated by the
Office of Thrift Supervision.  Plaintiffs do not object to this
request and do not contest these judicially noticed facts.

federal law," *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 559 (9th Cir.2002), *cert. denied*, 538 U.S. 1069 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir.1979), *aff'd*, 445 U.S. 921 (1980). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America, id.,* 309 F.3d at 559.

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008); 12 U.S.C. § 1464. OTS promulgated 12 C.F.R. § 560.2 as a preemption regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas, id.,* 514 F.3d at 1005.

Section 560.2(a) provides:

> OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in

accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.  To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) or § 560.10 of this part.  For purposes of this section, 'state law' includes any state statute, regulation, ruling, order, or judicial decision.[4]

Section 560.2(b) provides:

Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

...

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

--------

[4]12 C.F.R. § 560.110 pertains to "most favored lender usury preemption" and has no apparent relevance to this action.

        **(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;**

        **(6) Escrow accounts, impound accounts, and similar accounts;**

    **...**

        **(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;**

        **(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages**

    **....**

**Section 560.2(c) provides:**

    **State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:**

    **...**

        **(4) Tort law**

    **....**

    **As noted by the Ninth Circuit in *Silvas*, 514 F.3d at 1005, OTS has outlined a proper analysis in evaluating whether a state law is preempted under Section 560.2:**

> When analyzing the status of state laws under
> § 560.2, the first step will be to determine
> whether the type of law in question is listed
> in paragraph (b).  If so, the analysis will
> end there; the law is preempted.  If the law
> is not covered by paragraph (b), the next
> question is whether the law affects lending.
> If it does, then, in accordance with
> paragraph (a), the presumption arises that
> the law is preempted.  This presumption can
> be reversed only if the law can clearly be
> shown to fit within the confines of paragraph
> (c).  For these purposes, paragraph (c) is
> intended to be interpreted narrowly.  Any
> doubt should be resolved in favor of
> preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996).

In *Silvas, supra*, 514 F.3d 1001, mortgage applicants filed a putative class action in state court alleging that a federal savings and loan association's policy not to refund lock-in fees after applicants cancelled the transaction within the three-day window provided by TILA violated California's Unfair Competition Law.  The Ninth Circuit ruled:

> I *UCL § 17500: Unfair Advertising*
>
> As outlined by OTS, the first step is to
> determine if UCL § 17500, as applied, is a
> type of state law contemplated in the list
> under paragraph (b) of 12 C.F.R. § 560.2.  If
> it is, the presumption analysis ends.  Here,
> Appellants allege that E*TRADE violated UCL §
> 17500 by including false information on its
> website and in every media advertisement to
> the California public.  Because this claim is
> entirely based on E*TRADE's *disclosures and
> advertising*, it falls within the specific
> type of law listed in § 560.2(b)(9).
> Therefore, the presumption analysis ends.
> UCL § 17055 as applied in this case is
> preempted by federal law.
>
> II *UCL § 17200: Unfair Competition*

> Again, the first step is to determine if UCL § 17200, as applied, is a type of state law contemplated in the list under paragraph (b) of 12 C.F.R. § 560.2. Appellants allege E*TRADE's practice of misrepresenting consumer's legal rights in advertisements and other documents is contrary to the policy of California and thus violates UCL § 17200. This claim, similar to the claim under § 17500, fits within § 560.2(b)(9) because the alleged misrepresentation is contained in advertising and disclosure documents.
>
> In addition, Appellants' claim under UCL § 17200 alleges that the lock-in fee itself is unlawful.  That allegation triggers a separate section of paragraph (b).  Section 560.2(b)(5) specifically preempts state laws purporting to impose requirements on loan related fees.  *See Jones v. E*Trade Mortgage Co.*, 397 F.3d 810, 813 (9th Cir.2005)(finding E*TRADE's lock-in fee is not a separate transaction, but a loan related fee). Because the UCL § 17200 claim, as applied, is a type of state law listed in paragraph (b) - in two separate sections - the preemption analysis ends there.  Appellants' claim under UCL § 17200 is preempted.

514 F.3d at 1006.  The Ninth Circuit then addressed the

incidental affect analysis under Section 560.2(c):

> Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted.  Appellants argue that both of their state law claims fit under § 560.2(c)(1) and (4) because they are founded on California contract, commercial, and tort law, merely enforcing the private right of action under TILA.  They further contend that their claims use a predicate legal duty supplied by TILA, and therefore only have an incidental affect on lending.
>
> We do not reach the question of whether the law fits within the confines of paragraph (c) because Appellants' claims are based on types of laws listed in paragraph (b) of § 560.2, specifically (b)(9) and (b)(5).[3]

36

> [3]If we did reach the issue, we would reach the same result.  When federal law preempts a field, it leaves 'no room for the States to supplement it.' ... When an entire field is preempted, a state may not add a damages remedy unavailable under the federal law ... An integral part of any regulatory scheme is the remedy available against those who violate the regulations ....
>
> In this case, it is clear that the UCL has a much longer statute of limitations than does TILA ... It is also clear that Appellants seek to take advantage of the longer statute of limitations under UCL to remedy TILA violations, because without the extended limitations period their claims would be barred.
>
> An attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law.

*Id.* at 1006-1007.

Flagstar argues that Plaintiffs' fraud, conspiracy to breach fiduciary duties, and unfair business practices claims are preempted by Section 560.2(b).  The only allegations against Flagstar in support of these claims involve the yield spread premium.

With regard to the allegations that the yield spread premium was not disclosed, Flagstar cites *Salgado v. Downey Sav. & Loan Ass'n*, 2009 WL 960777 (C.D.Cal.2009) and *Hernandez v. Downey Sav. & Loan Ass'n*, 2009 WL 704381 (S.D.Cal.2009).

In *Salgado*, the plaintiff filed a complaint in state court alleging that Defendants failed to disclose a yield spread premium and stating claims for rescission based on fraud,

rescission based on unilateral mistake, and fraud.  Defendants

removed the action to the Central District, which issued an Order

to Show Cause why the case should not be remanded.  In ruling

that removal was proper based on the preemption provisions of

Section 560.2, the District Court held:

> In this case, Plaintiff Salgado's claims are
> purportedly grounded in state contract and
> fraud doctrines, but they are clearly
> directed at enforcing Defendants' alleged
> responsibility to disclose information about
> a home loan.  Plaintiff's claim for
> rescission based on unilateral mistake even
> alleges explicitly that enforcement of the
> loan would be unconscionable because, among
> other things, TILA mandates specific
> disclosures of accurate figures such as
> finance charges.  Plaintiff's claims
> therefore fall squarely within the confines
> of 12 C.F.R. § 560.2(b).  Thus, as in *Silvas*,
> this Court need not consider whether
> Plaintiff's claims fit under § 560.2(c).

In *Hernandez*, Plaintiff contended that Defendant failed to

disclose a yield spread premium and sought rescission of the loan

based on the contentions that Defendant's inadequate disclosure

violated California Civil Code § 2924c, was fraudulent, and

constituted her mistake of fact.  The District Court held:

> Each of plaintiff's state law rescission
> causes of action are premised on the
> inadequacy of Downey's *disclosure* of the YSP,
> conduct which is expressly regulated by §
> 560.2(b).

Flagstar further argues that the claims related to the

alleged payment of the yield spread premium are also preempted by

Section 560.2(b), citing *Prince-Servance v. BankUnited, FSB*, 2007

WL 3254432 (N.D.Ill.2007):

Plaintiff alleges that BankUnited violated the [Illinois Consumer Fraud and Deceptive Practices Act "ICFA"] and induced [the Mortgage Exchange "TME"] to breach its fiduciary duty to plaintiff.  BankUnited argues that the state laws making up the foundation of these claims are preempted for two reasons: first, plaintiff is seeking regulation of YSPs, which are loan-related fees, and second, the laws as applied in this context more than incidentally affect lending.  Plaintiff does not respond to BankUnited's argument that YSPs are loan-related fees, but instead argues that OTS' regulations only preempt laws that regulate a federal savings association's lending activity, and not laws of general applicability.  This states the issue too broadly ... It is clear from the language of the regulation and subsequent case law that to the extent a generally applicable law interferes with a federal savings association's lending activity it is preempted ... Thus, whether any given generally applicable state law will be preempted depends solely on whether the conduct complained of falls within the scope of OTS' regulation ... Here, plaintiff does not rebut BankUnited's argument that YSPs are loan-related fees.  Consequently, this would appear to be the end of the issue as laws attempting to regulate loan-related fees are explicitly preempted under § 560.2(b)(5). But even if YSPs are not loan-related fees, plaintiff clearly alleges that BankUnited failed to disclose the YSP paid in plaintiff's loan transaction.  Whether or not a certain term of a loan agreement must be disclosed is also listed as an area within the exclusive purview of the federal laws, and thus plaintiff's state law claims are preempted. § 560.2(b)(9).  Furthermore, any state regulation as to whether and how a YSP may be paid or disclosed more than incidentally affects lending since any decision in plaintiff's favor would place substantive requirements on the disbursement of YSPs that may or may not be congruous to the requirements of other states.  Such a 'hodgepodge' of state regulations is exactly what OTS was attempting to prevent through

1    preemption.

2         Plaintiff, relying solely on another Eastern District of

3    California decision, *Alcaraz v. Wachovia Mortgage, FSB,* 2009 WL

4    160308 (E.D.Cal.2009), contends that HOLA does not preempt common

5    law claims such as their fraud and breach of fiduciary duty

6    claims.   Judge O'Neill ruled:

7              The Wachovia defendants do not identify Ms.
               Alcaraz' specific causes of action which they
8              claim are preempted and broadly conclude:
               'Everything Wachovia is accused of doing
9              relates to the origination of the loan and
               related disclosures.'   The Wachovia
10             defendants appear to make a blanket argument
               that section 560.2(b)(4) and (b)(9) apply to
11             preempt all of Ms. Alcaraz' state law causes
               of action.   As such, this Court surmises that
12             the Wachovia defendants take the position
               that all but Ms. Alcaraz' (third) TILA and
13             (fourth) RESPA causes of action are
               preempted.
14
               Ms. Alcaraz notes that the complaint alleges
15             state common law actions sounding in contract
               and real property to avoid HOLA preemption
16             ....

17             The Wachovia defendants fail to explain how
               the individual state common law causes of
18             action are preempted, and this Court is in a
               position to make neither argument for the
19             Wachovia defendants nor a blanket conclusion
               that HOLA preempts all of Ms. Alcaraz' state
20             law causes of action.   Only Ms. Alcaraz'
               (eighth) UCL unfair business practices cause
21             of action is subject to HOLA preemption.   Her
               other state law causes of action arise from
22             common law, not a statute or other regulation
               subject to preemption.   As such, only the
23             (eighth) UCL unfair business practices cause
               of action is dismissed with prejudice as
24             preempted by HOLA.

25        Another district court decision on different facts is not

26   precedential.   All the case authority Flagstar cites is directly

                                   40

on point; it establishes that all of the state law claims against Flagstar are preempted by HOLA and must be dismissed as to Flagstar on this basis.

At the hearing, Plaintiffs contended that their fraud claims against Defendants has two parts.  The first part is the nondisclosure and payment of the yield spread premium.  The second part is that Defendant Ruggles allegedly told Plaintiffs "that the loan he had obtained for them would be financed at a fixed rate of approximately 4%, and that the total monthly payments due on the loans would be approximately $2,100.00," that "Ruggles told the Bassetts that their loan carried a prepayment penalty provision of only 24 months," and that Flagstar knew or should have known that Ruggles and/or IGS would have to deceive Plaintiffs or breach their fiduciary duties to Plaintiffs to induce Plaintiffs to enter into a loan which had an interest rate higher than Plaintiffs qualified for.  Plaintiffs argued that the second part of the alleged fraud is simply common law fraud that is not preempted by HOLA as against Defendant Flagstar.

Plaintiffs' contention was made for the first time at the hearing and was not supported by any case authority.  Generally, the Court does not address arguments made for the first time at oral argument.  However, because the issue is preemption, a question of law, the issue is addressed.  It is arguable that Plaintiff's claim is preempted by HOLA pursuant to Section 560.2(b)(4) because the gravamen of these fraud or breach of fiduciary duty claims is the "terms of credit."  In *Kelley v.*

*Mortgage Electronic Registration Systems, Inc.,* 2009 WL 2475703
(N.D.Cal.2009), the plaintiffs alleged that defendants violated
California's UCL by "making untrue or misleading statements ...
with the intent to induce" plaintiffs into entering a mortgage,
including statements regarding the terms and payment obligations
on the plaintiffs' loans.  The plaintiffs contended that
defendants committed fraud by making false representations about
plaintiffs' loans, including that any prepayment penalties would
be waived and that plaintiffs were properly qualified for the
loans.  The District Court held that the claims were preempted by
HOLA.

In *Rivera v. Wachovia Bank*, 2009 WL 2406301 (S.D.Cal.2009),
the plaintiff alleged that Wachovia knew he could not afford the
mortgage, induced him to sign the loan documents through
inadequate disclosures of the applicable interest rate and its
adjustment over time, and through misrepresentations about his
ability to pay, the allocation of monthly payments between
principal and interest, and the amortization feature of the loan.
The District Court held that plaintiff's state law claims based
on tort, contract, real property, and consumer protection laws
were preempted by HOLA.

In *Ayala v. World Savings Bank*, 616 F.Supp.2d 1007
(C.D.Cal.2009), the District Court held that plaintiffs' claim
for fraud based on allegations that the loan was unconscionable,
and that Defendants' express and implied representations that the
loan was viable and that Plaintiffs could in fact make the

1  payments was preempted by HOLA based on Section 560.2(b)(4)

2  because the claim pertained to the "terms of credit."  *See also*

3  *Andrade v. Wachovia Mortgage, FSB*, 2009 WL 1111182

4  (S.D.Cal.2009)(same).

5      In *Cosio v. Simental*, 2009 WL 201827 (C.D.Cal.2009), the

6  plaintiffs alleged that Defendants failed to provide them with

7  the terms, risks and consequences of the loan.  The District

8  Court held that plaintiffs' state law claims for elder abuse and

9  negligence were preempted by HOLA, specifically to the extent the

10  terms of the loan were at issue, by Section 560.2(b)(4).

11      These cases universally indicate that Plaintiff's claims

12  based on fraud or conspiracy to breach fiduciary duties against

13  Flagstar based on the allegation that Ruggles/IGS induced

14  Plaintiffs to enter into a loan with an interest rate higher than

15  Plaintiffs were qualified for will be preempted by HOLA.

16  Nonetheless, based on Plaintiffs' representations at oral

17  argument, they are given a final opportunity to amend to more

18  specifically allege the factual basis for this aspect of their

19  claims.

20      Defendant Flagstar's motion to dismiss the Second, Fourth,

21  and Eighth Causes of Action is GRANTED WITHOUT LEAVE TO AMEND to

22  the extent that these causes of action are based on the alleged

23  nondisclosure of the yield spread premium or the payment of the

24  yield spread premium.

25      Defendant Flagstar's motion to dismiss the Second, Fourth,

26  and Eighth Causes of Action is GRANTED WITH LEAVE TO AMEND to the

extent that these causes of action are based on the alleged
fraudulent misrepresentations or breaches of fiduciary duty by
Ruggles and/or IGS in inducing Plaintiffs to enter into a loan
which had an interest rate higher than Plaintiffs qualified for.
In granting leave to amend, whether these claims are preempted by
HOLA is deferred for later decision.

> 6.   Adequacy of Pleading Fraud Claim.

Defendant Flagstar moves to dismiss the Second Cause of
Action for fraud on the ground that the allegations in the FAC do
not satisfy the specificity requirements of Rule 9(b), Federal
Rules of Civil Procedure.  Defendant Flagstar's arguments are
directed to the allegations pertaining to the nondisclosure and
payment of the yield spread premium.  Because the Court has
dismissed the Second Cause of Action to the extent it is based on
the yield spread premium, it is unnecessary to address this
ground for dismissal.

> 7.   Adequacy of Pleading Conspiracy to Breach Fiduciary
> Duties.

Defendant IGS moves to dismiss the Fourth Cause of Action
for conspiracy to breach fiduciary duties on the ground that the
allegations of conspiracy are not adequately pleaded.

With respect to allegations of conspiracy, heightened
pleading is required by Rule 9(b) when the object of the
conspiracy is fraudulent.  *See Wasco Products v. Southwell
Technologies,* 435 F.3d 989, 991 (9th Cir.), *cert. denied*, 549
U.S. 817 (2006)("Based on these precedents and the plain language

44

of Rule 9(b), we hold that under federal law a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent.").  As explained in *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D.Cal.1990):

> To survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement ... It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards the wrongful goal by virtue of a mutual understanding or agreement.

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity. One of the purposes behind Rule 9(b)'s heightened pleading requirement is to put defendants on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations.  *See In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996).  Furthermore, Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *Id.*

Rule 9(b) requires that allegations of fraud be specific enough to give defendants notice of the particular misconduct

45

which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *Celado Int'l., Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 855 (C.D.Cal.2004); *see also Neubronner v. Milkin*, 6 F.3d 666, 671 (9th Cir.1993). As a general rule, fraud allegations must state "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). As explained in *Neubronner v. Milken*, *supra*, 6 F.3d at 672:

> This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts ... However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief.

At the hearing, Plaintiff referred to the allegations in Paragraphs 16 and 17 in arguing that the FAC adequately alleges the conspiracy. These allegations are conclusory and do not satisfy the specificity requirements set forth above. No allegations are made identifying the basis of Plaintiffs' information and belief; no allegations are made as to who are the parties to the alleged conspiracy, when it occurred, or who made any agreement to breach fiduciary duties.

Defendant IGS's motion to dismiss the Fourth Cause of Action is GRANTED WITH LEAVE TO AMEND.

B.   **MOTION TO STRIKE**.

Defendant Flagstar moves to strike Paragraphs 27-30 of the
FAC, the allegation, "In the alternative, the Bassetts demand
rescission of the loan transaction" in Paragraph 74 of the Sixth
Cause of Action for violation of TILA, and the prayer "[f]or
rescission of the loan transaction (if damages are unavailable or
would be inadequate to remedy the Bassetts' injuries."

1.   **Governing Standards**.

Rule 12(f) provides in pertinent part that the Court "may
order stricken from any pleading any insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter."
Motions to strike are disfavored and infrequently granted. *Neveu
v. City of Fresno,* 392 F.Supp.2d 1159, 1170 (E.D.Cal.2005).  A
motion to strike should not be granted unless it is clear that
the matter to be stricken could have no possible bearing on the
subject matter of the litigation.  *Id.*  The function of a Rule
12(f) motion to strike is to avoid the expenditure of time and
money that might arise from litigating spurious issues by
dispensing with those issues prior to trial.  *Fantasy, Inc. v.
Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other
grounds*, 510 U.S. 517 (1994).  A motion to strike may be used to
strike any part of the prayer for relief when the recovery sought
is unavailable as a matter of law.  *See Bureerong v. Uvawas*, 922
F.Supp. 1450, 1479 n. 34 (C.D.Cal.1996).

2.   **Paragraphs 27-30**.

Paragraphs 27-30 of the FAC allege:

47

27.   In mid-March 2009, after Flagstar, IGS and Zamani were served with the summons and complaint, Bradford served Flagstar, IGS and Zamani with written discovery.  This discovery was designed to elicit evidence and establish facts regarding the yield spread premium paid by Flagstar to IGS and other matters giving rise to Flagstar's liability in this matter.

28.   In April 2009, Bradford received a letter from Flagstar's attorney indicating that, because Flagstar had removed the case to Federal Court, Flagstar would not respond to the discovery Bradford had propounded.  No defendant responded to the discovery requests.

29.   On April 27, 2009, Bradford conducted a Rule 26(f) conference with the respective legal counsels for IGS, Zamani, and Flagstar. During the Rule 26(f) conference, Bradford asked Flagstar's counsel several times whether Flagstar paid any compensation to IGS or anyone at IGS in connection with the Bassetts' loans.  Flagstar's counsel refused to state whether Flagstar paid a yield spread premium.  Flagstar's counsel replied that Flagstar paid customary fees and that she was not prepared to say any more than that.

30.   As of the filing of this First Amended Complaint, Flagstar, IGS and Zamani have continuously refused to provide the Bassetts or their counsel any documentation regarding the yield spread premium paid with regard to the Bassett's loans.  Additionally, Flagstar, IGS and Zamani have refused to admit or deny whether a yield spread premium was paid with regard to the Bassett's loans.

Defendant Flagstar moves to strike these allegations as irrelevant.  The Complaint was filed in state court on January 26, 2009.  Flagstar represents that it was served with the Complaint on March 26, 2009 and that it removed the action to this Court on April 27, 2009, the same day it received

48

Plaintiffs' discovery requests filed under state law rules.  The allegation in Paragraph 30, that as of the date of filing the FAC on May 18, 2009, that Defendants had not provided discovery is objected to because the discovery was not yet due to be provided under the Federal Rules of Civil Procedure.

Plaintiff argues that the allegations in Paragraphs 27-30 are directly relevant:

> to the issues of: (1) why the Bassetts were forced to make their allegations regarding the kickback on information and belief; (2) whether the continuing obfuscation by Flagstar and the IGS defendants should give rise to equitable tolling; and (3) whether Flagstar and the IGS defendants acted with conscious disregard of the Bassetts' rights giving rise to exemplary damages.

> If the Bassetts are correct in their claim that Flagstar and the IGS defendants should have disclosed the kickback to the Bassetts, then the fact that Flagstar refused to disclose the kickback 'without a discovery order' and then followed through with that promise, is directly relevant to Flagstar's malicious intent.

As Flagstar replies, the Federal Rules of Civil Procedure allow parties to plead on information and belief so long as the allegations are properly identified and there is a likelihood they will have evidentiary support after a reasonable opportunity for further investigation or discovery.  *See* Rule 11(b)(3), Federal Rules of Civil Procedure; Schwarzer, Federal Civil Procedure Before Trial § 8:645.  Allegations about discovery-related conduct occurring after litigation has been filed are irrelevant to determining whether, before filing the complaint,

the plaintiff reasonably believed his allegation would have evidentiary support.

The allegations in Paragraphs 27-30 are irrelevant to the determination whether Plaintiffs are entitled to equitable tolling of the statutes of limitation applicable to the RESPA and TILA causes of action.  Plaintiffs' Complaint was filed in January 2009.  Actions that occurred after the filing of the action cannot be relevant to equitable tolling of the statute of limitations.

Allegations about discovery conduct occurring between the parties in March through May 2009 can have no relevance to Flagstar's malicious intent concerning the alleged payment of a yield spread premium in 2006.  These are evidentiary facts that add nothing of significance to the complaint.  As Flagstar asserts, Plaintiffs "fail to offer a single legal authority for their unfounded proposition that allegations about the parties' discovery and scheduling conferences are relevant to, or admissible for, the purpose of determining the availability of punitive damages."

Defendant Flagstar's motion to strike Paragraphs 27-30 of the FAC is GRANTED.  The allegations are irrelevant to stating the claims in the complaint.  Their inclusion will result in the needless expenditure of time and effort.

            3.  <u>Rescission</u>.

Flagstar moves to strike the allegation in the Sixth Cause of Action for violation of TILA for rescission as well as the

prayer for rescission on the ground that the right to rescission under TILA does not apply to a residential mortgage transaction. 15 U.S.C. § 1635(e)(1).

Plaintiffs do not dispute that they are not entitled to rescission in connection with the Sixth Cause of Action. Plaintiffs' argue that the motion to strike should be denied because they will have the right to elect to rescind the loans if they prevail on their state law fraud claim. Plaintiffs further argue:

> Flagstar's moving papers ignore the fact that the Bassetts have plead that they were induced by fraud to enter into the loans at issue. Flagstar falsely asserts to this Court that '[t]he Bassetts do not request the remedy of rescission in connection to any other cause of action.' ... Said assertion by Flagstar is unfounded given that the Bassetts do not assign particular requests for relief in the prayer to various causes of action.

The only reference to rescission in the FAC is in the Sixth Cause of Action.  All of the other causes of action seek monetary damages.  Plaintiffs' fraud claim against Flagstar is preempted by HOLA to the extent it is based on the nondisclosure and payment of the yield spread premium.  However, leave to amend has been granted as to Plaintiffs' fraud claim against Flagstar based on the alleged fraudulent misrepresentations or breaches of fiduciary duty by Ruggles and/or IGS in inducing Plaintiffs to enter into a loan which had an interest rate higher than Plaintiffs qualified for.  It cannot be determined at this juncture that rescission of Plaintiffs' loans based on Flagstar's

51

1    alleged fraud is a remedy to which Plaintiffs are not entitled.

2         Defendant Flagstar's motion to strike the prayer for

3    rescission is DENIED WITHOUT PREJUDICE.

4                              CONCLUSION

5         For the reasons stated:

6         1.   Defendants' motions to dismiss are DENIED IN PART,

7    GRANTED IN PART WITH LEAVE TO AMEND, and GRANTED IN PART WITHOUT

8    LEAVE TO AMEND;

9         2.   Defendant Flagstar's motion to strike is GRANTED IN PART

10   AND DENIED IN PART;

11        3.   Plaintiffs shall file a Second Amended Complaint in

12   accordance with the rulings in the Memorandum Decision and Order

13   within 20 days from the filing date of this Memorandum Decision

14   and Order.

15        IT IS SO ORDERED.

16   Dated:   __September 14, 2009__          _____/s/ Oliver W. Wanger_____
                                             UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

                                    52